IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JEFFEREY M.,[1] <br><br> Plaintiff, <br> v. <br><br> COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Case No.: 3:24-cv-00564-AN <br><br><br> OPINION AND ORDER |

      Jeffery M. ("Plaintiff") brings this action seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction over Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Court affirms the Commissioner's decision.

## BACKGROUND

### I.    Plaintiff's Application

      Plaintiff was born on June 29, 1967, making him 50 years old on his alleged onset date of July 1, 2017. Tr. 66. Plaintiff has a high school education and no past relevant work. Tr. 40. In his application, Plaintiff alleges disability due to "Degen." Tr. 67.

      The Commissioner denied Plaintiff's applications initially and upon reconsideration. Tr. 90, 102-03. On January 19, 2023, Plaintiff appeared with counsel for a hearing before Administrative Law Judge ("ALJ") Cynthia Rosa. Tr. 47-63. On March 7, 2023,

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

the ALJ issued a written opinion, finding Plaintiff not disabled. Tr. 30-42. The Appeals Council denied review. Tr. 1-6. Plaintiff now seeks judicial review of the ALJ's final decision.

## II.     Sequential Disability Evaluation

The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step sequential procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the burden for steps one through four, and then the burden shifts to the Commissioner at step five. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

The five-step evaluation requires the ALJ to determine: (1) whether a claimant is "doing substantial gainful [work] activity"; (2) whether the claimant has a "medically determinable physical or mental impairment" or combination of impairments that is severe and either lasts at least a year or can be expected to result in death; (3) whether the severity of the claimant's impairments meets or equals one of the various impairments specifically listed by Commissioner; (4) whether the claimant's residual functional capacity ("RFC") allows the claimant to perform her past relevant work; and (5) whether, given the claimant's RFC, age, education, and work experience, the claimant can make an adjustment to other work that "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a), 416.920(a).

## III.    The ALJ's Decision

At step one, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2022, and that Plaintiff had not engaged in substantial gainful activity since July 1, 2017, the alleged onset date. Tr. 32. At step two, the ALJ determined that

Plaintiff suffered from the following severe, medically determinable impairments: lumbar spine degenerative disc disease with radiculopathy, and right hip bursitis. *Id.* At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or equals a listed impairment. Tr. 34. The ALJ then concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he can frequently balance and climb ramps and stairs, and only occasionally stoop and climb ropes, ladders, and scaffolds. Tr. 34.

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a meat cutter. Tr. 40. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as Bench Assembler (DOT# 706.684-022), a light level occupation 100,000 jobs available; Parking Lot Attendant (DOT# 915.473-010), a light level occupation with 96,000 jobs available; Vending Machine Operator (DOT# 319.464-014), a light level occupation with 20,000 jobs available; and Deflector Operator (DOT#529.687-058), a light level occupation with 85,000 jobs available. Tr. 41. Therefore, the ALJ concluded that Plaintiff is not disabled. Tr. 42.

## STANDARD OF REVIEW

The district court may set aside the Commissioner's denial of benefits only if the ALJ's findings are "'not supported by substantial evidence or is based in legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The district court "cannot affirm the [ALJ's] decision 'simply by

isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record. *Id.* Where the record as a whole can support either the grant or denial of benefits, the district court "'may not substitute [its] judgment for the ALJ's.'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) mechanically applying Rule 202.14 of the Medical Vocational Guidelines without considering Plaintiff's case as borderline due to his age; (2) failing to properly evaluate Plaintiff's impairments at step two; (3) failing to provide specific, clear and convincing reasons to reject his symptom testimony; and (4) failed to include all of Plaintiff's limitations at step five.

### I.  Application of Rule 202.14

"Social security regulations divide claimants into three age categories: younger persons (those persons under age 50), persons closely approaching advanced age (those persons age 50-54), and person so advanced age (those persons age 55 or older)." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1069 (9th Cir. 2010) (citing 20 C.F.R. § 404.1563(c)–(e)). ALJ's "will not apply the age categories mechanically in a borderline situation." 20 C.F.R. § 404.1563(b). Instead, if a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination that you are disabled, [ALJ's] will consider whether to use the older age category after evaluating the overall impact of all the factors of your case." *Id.* However, an ALJ is "required by regulation *only to consider* whether to use the older age category." *Lockwood*, 616 F.3d at 1069 (emphasis added).

Furthermore, an ALJ is not required to "explain in her written decision why she did not use an older category." *Lockwood*, 616 F.3d at 1070.

Plaintiff argues that the ALJ failed to consider an alternative application of Grid Rule 202.14 because he is a borderline case whose age was within a few days to a few months of reaching a higher age category. Pl.'s Opening Br. 4, ECF 12. Plaintiff is incorrect.

Plaintiff states that the present case is distinguishable from *Lockwood* because the ALJ evaluated him "under 202.14 only," which encompasses individuals closely approaching advanced age, rather than also evaluating him under Rule 202.06, which is for individuals of advanced age. Pl.'s Opening Br. 4-5, ECF 4. However, the present case is not clearly distinguishable from *Lockwood*. In *Lockwood*, the claimant was only one month from becoming a person of advanced age, and the Ninth Circuit determined that because the ALJ knew the claimant's age, date of birth, and the regulation prohibiting her from mechanically applying the age categories in a borderline situation, that the ALJ did not err. 616 F.3d at 1071-72.

In the present case, the only difference is that Plaintiff was three months from becoming a person of advanced age, rather than a little over one month, on the date of the ALJ's decision. Tr. 42, 66. Just as in *Lockwood*, in the present case, the ALJ knew the claimant's age, date of birth, and referenced the regulation prohibiting her from mechanically applying age categories in a borderline situation. *See* Tr. 40. There is no indication the ALJ was unaware of the regulations, and the ALJ did not err when exercising her discretion on applying the approaching advanced age classification rather than the advanced age classification.

**II.     Step Two**

The ALJ determines if a claimant has "a medically determinable physical or mental impairment" at step two of the disability evaluation. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(ii). At step two, a claimant is not disabled if the claimant does not have any medically severe impairments. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a). An impairment is not severe "when [the] medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Social Security Ruling (SSR) 85-28, *available at* 1985 WL 56856, at *3. Even if an impairment is not severe, the ALJ must still consider its limiting effect when formulating the claimant's RFC. *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014). In contrast, an ALJ need not consider limiting effects of non-medically determinable impairments. *See Rodrigues v. Comm'r Soc. Sec. Admin.*, No. 1:22-cv-01077-JLT-GSA, 2024 WL 2834822, at *4 (E.D. Cal. June 4, 2024), adopted by, 2024 WL 3226762 (June 28, 2024) (stating that if claim advances beyond step two, the ALJ is required only to consider "impairments that are medically determinable, whether severe or non-severe" (citing 20 C.F.R. § 404.1545).

The ALJ found that Plaintiff had two severe impairments at step two, lumbar spine degenerative disc disease with radiculopathy, and right hip bursitis. Tr. 32. The ALJ also determined that Plaintiff has non-severe impairments, such as some level of bilateral hearing loss for which Plaintiff uses hearing aids, as well as major depressive disorder and generalized anxiety disorder. Tr. 32-33. Plaintiff argues that the ALJ erred by not finding his mental health impairments severe, which led to an incorrect RFC determination. Pl.'s Opening Br. 5-8.

Plaintiff, however, is mistaken.

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)). Whether Plaintiff's mental health impairments were designated as severe or non-severe impairments, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments when formulating the RFC. SSR 96-8p. Because step two was resolved in plaintiff's favor, and the ALJ continued with the sequential analysis, any error at step two was harmless. *Buck*, 869 F.3d at 1049 (describing step two errors as harmless if an ALJ decides it in claimant's favor).

As for whether finding Plaintiff's mental health impairments severe would have affected the RFC, Plaintiff assumes, incorrectly, that an ALJ's findings at step two determines the ALJ's RFC formulation at step five. *See Hoopai v. Astrue*, 499 F.3d 1071, 1075-76 (9th Cir. 2007) ("The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five."); *see also Lara v. Astrue*, 305 F. App'x 324, 326 (9th Cir. 2008) (rejecting the plaintiff's argument that "the ALJ's finding of a severe impairment at step two … necessarily requires inclusion of that impairment in the hypothetical question posed to the VE at step five" because "[a] step-two determination is not dispositive at step five"). The ALJ did not err by finding Plaintiff's mental health impairments non-severe at step two.

### III.     Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At his hearing, Plaintiff testified that he could not work on a regular, full-time

basis because of his back pain, anxiety, and depression. Tr. 55. He explained that he could not sit for long periods, could no longer lift 100-pound boxes, and that he could not bend over frequently enough to do any type of gardening. Tr. 54-56. He further explained that while he is able to grocery shop once a week, drive, do dishes, laundry, cook, and other household chores, he does them only when he feels up to it. Tr. 56. He also stated that other than watching tv, he reads quite a lot. Tr. 57. As for spending time with others, he has relatives that visit every now and then, along with friends of his parents, but that he mostly isolates due to Covid. Tr. 57. Prior to Covid, he testified that he did not go out much because he was not able to. Tr. 58.

The ALJ determined that the Plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 35. The ALJ discounted Plaintiff's subjective symptom testimony because it was inconsistent with his medical records, and he received primarily conservative treatment.

1. **Treatment**

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Likewise, "evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain

approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received").

Here, the ALJ relied on reports of the Plaintiff's conservative treatment, as well as his lack of treatment. In August 2018, Plaintiff reported that his back pain had been an ongoing issue for 28 years, that it had gotten substantially worse in the last six months, and that his pain was reaching 9/10 three times a week. Tr. 450. He reported not being able to sit more than two hours, stand for more than one hour, and that he had some difficulty with his gait. *Id*. He also reported that his pain got better with stretching, lying down, and changing positions. *Id*. Plaintiff also reported taking tizanidine and Norco for his pain treatment. *Id*. Upon examination, despite reporting gait issues, his gait was normal, and he was able walk on his heels and toes, though there was some difficulty with tandem walking. *Id*. While he also had some limited flexibility, he had 5/5 strength in his lower extremities and grossly intact sensation. Tr. 451. Following examination, Dr. Punsalan did not believe spinal surgery was urgently indicated, but did believe Plaintiff needed physical therapy for two- to -three months before returning, and that he should follow-up with his primary care provider for pain management. *Id*. Plaintiff followed up with Dr. Punsalan eight months later, in April 2019, still complaining of chronic, severe back pain, and reported that he was unable to find a local physical therapist that would take his insurance. Tr. 449. Dr. Punsalan ordered an EMG, and once again prescribed physical therapy and pain management, believing that the non-urgent nature of Plaintiff's problem was not ripe for surgical intervention. *Id*. Plaintiff returned in August 2019, four months later, with essentially unchanged complaints of back pain. Tr. 447. Plaintiff did report that he was starting physical therapy in a few days. *Id*. Dr. Punsalan also referred Plaintiff out to a spinal surgeon to discuss his options while also prescribing physical therapy, pain management, and a new MRI. *Id*. By December

2019, Plaintiff had still not engaged in physical therapy, this time due to moving from Portland to Tillamook, while repeating his pain complaints. Tr. 445. Dr. Punsalan again prescribed physical therapy and pain management, and still did not believe spinal surgery was urgently indicated "nor would be predictably helpful at the current time." *Id*. At an appointment in May 2020, Plaintiff had only seen his physical therapist "a few times," and was managing his pain with Advil and muscle relaxers. Tr. 443. He also reported difficulties using any kind of walking aid due to shoulder issues. *Id*. Dr. Punsalan still did not believe Plaintiff needed spinal surgery and continued prescribing physical therapy and pain management, along with trochanteric injections. *Id*. In September 2020, Plaintiff reported his physical therapy ended between January and February 2020, and he repeated his complaints of severe back pain. Tr. 521. At this appointment, Plaintiff was given trochanteric corticosteroid injections and was prescribed self-directed physical therapy following the injection. Tr. 522.

Plaintiff argues that conservative treatment was not a valid basis for discounting his pain testimony because he could not afford physical therapy, and he did seek more aggressive treatment. Pl.'s Opening Br. 10, ECF 12. Plaintiff, however, is incorrect.

While Plaintiff may not have pursued physical therapy initially because he could not afford it, he eventually did find a physical therapist and underwent an initial evaluation on January 20, 2020. Tr. 428. In May 2020, he reported to Dr. Punsalam that he had only seen his therapist a few times, and in September 2020, he reported that his physical therapy had ended between January and February. Tr. 443, 521. However, his physical therapy records show that while he was approved for ten visits, he only went to the initial evaluation. Tr. 428. Between his initial visit on January 20, 2020, and his discharge on March 19, 2020, Plaintiff's only records show that he had two missed appointments before voluntarily withdrawing from physical therapy

without providing an explanation. Tr. 430, 435, 436. Plaintiff's conservative and lack of treatment despite his complaints of severe and disabling pain was a specific, clear and convincing reason to discount his pain testimony.

Plaintiff's second argument, that it was improper to discount his testimony because he was a candidate for surgery, despite the ALJ's finding to the contrary, fares no better. Plaintiff was referred to a spine surgeon to discuss his options because he failed to engage with his conservative treatment, that being pain management and physical therapy. Tr. 447. However, there are no records to indicate he ever met with a spinal surgeon or what was recommended. Following that referral, however, Dr. Punsalam continued to state that surgery was not the best option. Tr. 443, 445, 521-22.

Given the above, the ALJ did not err in discounting Plaintiff's testimony due to both his conservative treatment and lack of treatment.[2]

## IV.    Step Five

The RFC must contemplate *all* medically determinable impairments, including those which the ALJ found non-severe, and evaluate all the relevant testimony, including the opinions of medical providers and the subjective symptom testimony set forth by the claimant. 20 C.F.R. § 404.1545; SSR 96–8p available at 1996 WL 374184. In formulating the RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's

---

[2] Because the ALJ provided at least one valid reason for discrediting plaintiff's symptom testimony, this Court need not resolve any other dispute regarding the ALJ's other bases for discounting plaintiff's testimony, other than to note that while plaintiff challenged the other bases upon which the ALJ relied, had there been error, such error would have been harmless. See *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (finding that the ALJ's reliance on invalid reasons was harmless error because the ALJ provided other valid reasons that support the ALJ's credibility determination); *e.g. Jones v. Saul*, 818 F. App'x 781, 781-82 (9th Cir. 2020) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony and thus "[a]ny error in the ALJ's additional reasons for discounting [claimant's] symptom testimony [were] harmless").

impairments into concrete functional limitations. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only those limitations which are supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

At step five, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that the claimant can perform despite [his] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); 20 C.F.R § 416.920(g). In making this determination, the ALJ relies on the Dictionary of Occupational Titles (DOT), which is the Social Security Administration's "primary source[] of reliable job information" regarding jobs that exist in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).

The ALJ relies on the testimony of a VE to identify specific occupations that a claimant can perform in light of her RFC. 20 C.F.R § 416.966(e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). However, "if an ALJ's hypothetical does not reflect all of the claimant's limitations, then 'the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)). If that situation arises, "the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). Even if the ALJ fails to include all of a claimant's limitations, such error could still be harmless if it is "inconsequential to the ultimate nondisability determination." *Colvin*, 806 F.3d at 494.

Plaintiff alleges the ALJ failed to include a limitation for use of an assistive device while walking. Pl.'s Opening Br. 11-12, ECF 12. According to Plaintiff, because this

limitation was not included in the hypothetical posed to the VE, the ALJ's reliance on the VE's testimony was invalid. Plaintiff, however, is incorrect.

As noted above, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *Stubbs–Danielson*, 539 F.3d at 1174. Only those limitations which are supported by substantial evidence must be incorporated into the RFC. *Osenbrock*, 240 F.3d at 1163-65. Dr. Punsalan prescribed a cane or walking stick as needed for ambulation. Tr. 371. However, Plaintiff reported that he did not use one because of shoulder pain. Tr. 443. Plaintiff's mother reported the same. Tr. 245. Furthermore, at a consultative examination conducted by Dr. Leinenbach, Plaintiff had a slow but stable and reciprocating gait, steady tandem gait, could walk on heels and toes, and did not use an assistive device. Tr. 558. The functional assessment Dr. Leinenbach provided also stated that plaintiff was limited to standing and walking for four-to-six hours in an eight-hour workday, no sitting limitations, and no assistive device required. Tr. 559. Additionally, Plaintiff did not report needing or using a cane when he fell while hiking, nor when he was discharged after visiting the emergency department following the fall. Tr. 409-10. Plaintiff does not dispute these findings. Given the conflicting medical evidence, as well as the testimony from both Plaintiff and his mother, the ALJ did not err by not including a limitation for use of an assistive device into the RFC.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

## CONCLUSION

For the reasons set forth in this opinion, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 2nd day of July, 2025.

Adrienne Nelson
United States District Judge